# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

V. CHERYL WOMACK,

      *Plaintiff*,

vs.

U.S. BANKCORP, INC., and
U.S. BANKCORP INVESTMENTS, INC.,

      *Defendants*.

Case No. 09-2396-EFM

## MEMORANDUM AND ORDER

On or about July 18, 2002, Plaintiff V. Cheryl Womack opened an investment account on behalf of her company, VCW Holding Company, LLC, (VCW) with Defendant U.S. Bankcorp Investments, Inc. (USBII).[1] Approximately one year after opening this account, Womack claims that an employee of VCW, as part of a scheme to embezzle money from Womack and VCW, submitted requests to USBII to transfer funds from VCW's account with USBII to an account held by another banking institution. Womack claims that these requests contained forged signatures, and USBII failed to take appropriate action to determine if the requests were authorized. Womack claims at least $1,100,000 was transferred out of VCW's account over an approximate four year period. Womack filed the instant action claiming USBII and USB are liable for the unauthorized transfers,

---

[1] Defendant U.S. Bankcorp, Inc. (USB) is the parent company to USBII.

alleging violation of the Kansas Uniform Commercial Code - Funds Transfers, breach of fiduciary duty, negligence, negligent training and supervision of employees, and conversion.

Defendants move the Court to stay this litigation and to compel arbitration based on a Pre-Dispute Arbitration Agreement contained within both the Account Application and a Client Profile Update, each of which Womack signed. Womack essentially challenges the validity of the agreements, and claims that the arbitration clause is both procedurally and substantively unconscionable. For the following reasons, the Court grants Defendants' motion.

## DISCUSSION

When evaluating arbitration agreements under the Federal Arbitration Act (FAA), the Tenth Circuit has applied a standard similar to the summary judgment standard.[2] That standard provides that the moving party must first establish that there is a valid arbitration agreement.[3] Once a valid arbitration agreement is established, the burden shifts to the opposing party to show a genuine issue of fact as to the validity of the arbitration agreement.[4] State law contract principles control when determining the enforceability of an arbitration agreement.[5]

Defendants contend that on July 18, 2002, Womack signed a USBII Account Application that contained the following provision directly above her signature.

> In consideration of your accepting one or more accounts, I hereby acknowledge that I have read, understood and agreed to the terms set forth in the New Account Terms, Conditions, Pre-Dispute Arbitration booklet accompanying this application (herewith referred to as the "New Account Booklet").

---

[2]*Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006); *see also Kuhn v. Ameriquest Mortgage Co.*, 2004 WL 2782568, at *1 (D. Kan. Dec. 1, 2004).

[3]*Perkins v. Rent-A-Center, Inc.*, 2004 WL 1047919, at *2 (D. Kan. May 5, 2004).

[4]*Id.*; *Hardin*, 465 F.3d at 475.

[5]*Hardin*, 465 F.3d at 475.

> I REPRESENT AND ACKNOWLEDGE THAT I HAVE READ THE TERMS AND CONDITIONS GOVERNING THIS ACCOUNT AND AGREE TO BE BOUND BY SUCH TERMS AND CONDITIONS AS CURRENTLY IN EFFECT AND AS MAY BE AMENDED FROM TIME TO TIME. THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION AGREEMENT AND OTHER CONDITIONS, ALL OF WHICH APPEAR IN THE "NEW ACCOUNT BOOKLET."
>
> I ACKNOWLEDGE RECEIPT OF THE "NEW ACCOUNT BOOKLET."[6]

The New Account Booklet set forth the New Account Terms, Conditions, and Pre-Dispute Arbitration Agreement. Specifically, the Pre-Dispute Arbitration Agreement provides in relevant part:

> I agree that all controversies that may arise between us concerning any order or transactions, or the continuation, performance or breach of this or any other agreement between us, whether entered into before, on, or after the date this account is opened, shall be determined by arbitration. . . . I am aware of the following:
>
> (A) Arbitration is final and binding on all parties.
>
> (B) The parties are waiving their right to seek remedies in court, including the right to jury trail (sic).
>
> (C) Pre-arbitration discovery is generally more limited than and different from court proceedings.
>
> (D) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
>
> (E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.[7]

---

[6] Doc. 6-2, p.2 (emphasis in original).

[7] *Id.* at 7-8.

The New Account Booklet further provides that "You [USBII] may amend this agreement at any time effective upon notice to me [Womack]."[8]

The Client Profile Update contains similar notice above the signature line that a pre-dispute arbitration clause is included in the agreement. First, the notice directs the signor to "Read disclosures and Customer Agreement on reverse before signing."[9] Immediately below that notice, a second notice provides that "A predispute arbitration clause is included in item 18 in the customer agreement. The customer agrees to be bound to (sic) by the terms and conditions contained in the Customer Agreement and as may be amended from time to time."[10] Paragraph 18 of the Customer Agreement provides, in part:

> I agree that any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof, whether executed or to be executed within or outside the United States, and whether asserted against USBI and/or its present or former agents or employees, will be settled by arbitration before and in accordance with the then current rules of the National Association of Securities Dealer, Inc. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Notwithstanding anything to the contrary in this agreement, the arbitrability of disputes under this agreement shall be governed by the Federal Arbitration Act.[11]

Defendants contend that based on these agreements, which Womack agreed to and signed, Womack's claims must be referred to arbitration. Defendants assert that each of Womack's claims arise from transactions with USBII relating to the VCW account, and accordingly, clearly fall within the agreements and are subject to arbitration.

---

[8]*Id.* at 12.

[9]Doc. 6-1, p.1.

[10]*Id.*

[11]*Id.* at 2.

In response, Womack first argues that the choice of law provision in the Customer Agreement stating that Minnesota law applies is unenforceable because the Customer Agreement is an adhesive and unconscionable contract. Defendants disagree, but assert that for purposes of this motion, they agree to an analysis under Kansas law as there is no appreciable difference between the two jurisdictions. Therefore, we need not decide that issue at this time, and proceed with our discussion, applying Kansas law.

Under Kansas law, "a party who freely enters a contract is bound by it even though it was unwise or disadvantageous to the party, so long as the contract is not unconscionable."[12] The Kansas Supreme Court has provided a list of factors courts may consider in determining whether a contract provision was unconscionable.[13] That list includes:

> (1) The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position ...; (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods ...; (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect ...; (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract ...; (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate ...; and (10) inequality of bargaining or economic power.[14]

---

[12] *Oesterle v. Atria Mgmt. Co., LLC*, 2009 WL 2043492, at *3 (D. Kan. July 14, 2009) (quoting *In re Universal Serv. Fund. Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1125 (D. Kan. 2003) (internal quotations omitted)).

[13] *Willie v. Sw. Bell Tel. Co.*, 219 Kan. 755, 549 P.2d 903 (1976).

[14] *Id.* at 758-59, 549 P.2d at 906-07.

In addition to these factors, the Court "must find that the contract provision is so outrageous and unfair in its wording or its allocation that it shocks the conscious."[15] Case law suggests that there must be additional factors, such as deceptive bargaining conduct as well as unequal bargaining power, to render a contract unconscionable.[16]

Womack's arguments appear to be limited to *Willie* factors 1, 3, 6, and 10, and focuses the majority of her arguments on the Client Profile Update and the associated Customer Service Agreement. Womack claims that the arbitration clause of the Customer Service Agreement amounts to an unconscionable provision in an adhesion contract that requires her to forego the right to a jury trial and prevents discovery necessary for her to litigate her claims. Womack argues that the agreement is a standardized, pre-printed contract, drafted specifically for USBII, and allows for no negotiations between the parties, requiring her to either "take it or leave it" based on USBII's superior bargaining power. Womack contends that she had no opportunity to bargain, was never presented a copy of the Customer Agreement, and denies knowing that the terms of such Customer Agreement would be applied to her account. She further argues that because the Customer Agreement was signed after she had already established her account, she would have been forced to make the decision of either signing the agreement or closing her account, leaving her no meaningful choice of whether to sign.

In addition to being procedurally unconscionable, Womack argues that the arbitration provision is substantively unconscionable because it denies her access to the court, precludes a trial

---

[15] *Oesterle*, 2009 WL 2043492, at *3 (citing *Adams v. John Deere Co.*, 13 Kan. App. 2d 489, 492, 774 P.2d 355, 357 (1989)).

[16] *Id.*; *see also Adams*, 13 Kan. App. 2d at 494, 774 P.2d at 359 (the doctrine of unconscionability "is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain").

by jury, and limits discovery. Womack asserts that a number of depositions are required to advance her claims, which may not be permitted if she is required to proceed to arbitration. Womack contends that USBII is using the arbitration process as a weapon to shield itself from the discovery process, which defeats the purpose of arbitration. Womack further argues that should arbitration be compelled, she would be required to incur substantial, and possibly prohibitive expenses such as filing and hearing fees, to pursue her claims. Womack asserts that she would not be required to pay such fees in federal court. She claims that these constraints "amount to a substantively unconscionable burden to which no reasonable banking customer would knowingly agree."[17] Womack lastly claims that because Defendants have failed to submit sufficient evidence to establish the existence of an enforceable contract, arbitration cannot be compelled. We disagree.

Womack does not appear to dispute that she signed both the Account Application and the Client Profile Update. Yet, although Womack signed both these agreements, she claims that she has "not reviewed or read either the Customer Agreement or the New Account Booklet," and that she never agreed or consented to the terms contained in either the Customer Agreement or the New Account Booklet.[18] Astonishingly, Womack further states that she "had no knowledge of U.S. Bancorp's position that disputes relating to the VCW Account were subject to mandatory arbitration" or that the terms of Customer Agreement were being applied to her account.[19] Here, each agreement clearly provided Womack notice of the arbitration clause, and with regard to the Client Profile Update, the notice specifically directed her to the exact paragraph in the Customer

---

[17]Doc. 11, p.14.

[18]Doc. 11-1, p.1 ¶¶ 4-5 (Affidavit of V. Cheryl Womack).

[19]*Id.* ¶ 6.

Agreement located on the opposite side of the very page she was signing. We are at a loss as to how Womack was unaware the arbitration agreement was being applied to her account where directly above her signature on both documents, specific notice was provided in clear terms that such was the case. It is a well established rule of law in Kansas that a party signing a contract has "a duty to learn the contents of a written contract before signing it, and such duty includes reading the contract and obtaining an explanation of its terms."[20] Therefore, a party who signs a written contract is bound by its provisions regardless of the failure to read or understand the terms, unless the contract was entered into through fraud, undue influence, or mutual mistake.[21] We find no such fraud, undue influence, or mutual mistake, nor does Womack argue that such occurred in this case.

Defendants, in support of their position that the agreements are valid, provided the affidavit of Lisa May, a licensed financial consultant with USBII. Ms. May stated that she traveled to Womack's home where, on July 18, 2002, she personally observed Womack sign the Account Application.[22] Ms. May further stated she left a carbon copy of the Account Application with Womack, and provided her with a New Account Booklet.[23] The fact that Womack was unable to locate either the Customer Agreement or the New Account Booklet in her records is not proof that she did not receive them. In fact, Womack does not deny ever receiving the Customer Agreement or the New Account Booklet in her affidavit, but rather, stated that she simply "do[es] not believe"

---

[20]*Albers v. Nelson*, 248 Kan. 575, 578-79, 809 P.2d 1194,1197 (1991); *see also Oesterle*, 2009 WL 2043492, at *5.

[21]*Albers*, 248 Kan. at 579, 809 P.2d at 1197.

[22]Doc. 13-1, pp.1-2 ¶¶ 5-6 (Affidavit of Lisa May).

[23]*Id.* ¶ 7.

she ever received them.[24] Such statements are insufficient to refute Defendants' evidence demonstrating the existence of a valid arbitration agreement.

We further find Womack's arguments that the arbitration provision is both procedurally and substantively unconscionable unpersuasive as well. Generally, a contract is procedurally unconscionable where there is a lack of knowledge or a lack of voluntariness in entering a contract.[25] The fact that an arbitration clause is part of an standardized USBII contract does not in and of itself make the provision unconscionable. Additional conduct is required.[26] In addition and as previously discussed, the arbitration clause was not obscured in the middle of small print, but rather, was identified by capital letters in the Account Application and by specific paragraph number in the Client Profile Update.[27] And while it is not entirely clear that USBII would have accepted any suggested change to the agreement from Womack, thereby creating an inequality of bargaining power, that alone is insufficient to find the arbitration clause in this case to be unconscionable. Womack has not provided, nor even suggested, that any evidence exists proving any deceptive practice on behalf of USBII or any other conduct to support Womack's position. Womack could have chosen to not sign the agreement and turn to another brokerage firm to handle her finances.

---

[24] Doc. 11-1, p.1 ¶¶ 3, 9.

[25] *John Deere Leasing Co. v. Blubaugh*, 636 F. Supp. 1569, 1573 (D. Kan. 1986). Lack of knowledge is demonstrated by "a lack of understanding of the contract terms arising from inconspicuous print or the use of complex, legalistic language, ... disparity in sophistication of parties, ... and lack of opportunity to study the contract and inquire about contract terms, ... A lack of voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *Id.*

[26] *Oesterle*, 2009 WL 2043492, at *4 (citing *Blubaugh*, 636 F. Supp. at 1573).

[27] We also note that the New Account Booklet specifically provided USBII with the authority to amend the terms of the account provided that notice was given to the customer, which in this case, was accomplished through the Client Profile Update.

We also find that the arbitration clause is not substantively unconscionable. Substantive unconscionability is found when the terms of the contract are of such an oppressive character as to be unconscionable.[28] First, Womack is correct in claiming that compelling arbitration will effectively deny her access to the court and deny her the ability to take her claims to a jury, but, the purpose of arbitration is to do just that – remove the dispute from the court system. Womack can hardly claim surprise since the language of the arbitration agreement specifically indicated that access to the courts and a jury was precluded. Arbitration, however, still provides Womack with the ability to challenge Defendants' conduct through an adversarial proceeding, whereby she can present evidence and question witnesses regarding her claims. Further, while depositions are discouraged, they are not prohibited, and procedures are in place within arbitration guidelines through which a party may move, under certain circumstances, to take a deposition.

Womack also argues that compelling arbitration would require her to "incur substantial, and possibly prohibitive expenses, in order to pursue her claims in this case," and specifically references an $1,800 filing fee and a $1,200 fee for each half-day hearing session.[29] She claims that these fees impose a financial burden that she would not have to endure if her case remained in federal court. The party seeking to invalidate an arbitration provision based on prohibitive costs bears the burden of showing that arbitration would be cost prohibitive.[30] While she is correct that there are fees

---

[28]*Blubaugh*, 636 F. Supp. at 1573. Substantive unconscionability can be found "when there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach, ... a large disparity between the cost and price or a price far in excess of that prevailing in the market price, ... or terms which bear no reasonable relationship to business risks assumed by the parties." *Id.*

[29]Doc. 11, p.15.

[30]*Oesterle*, 2009 WL 2043492, at *4 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)).

associated with arbitration, and in all likelihood, she will incur some fees, she has not come forth with any evidence to demonstrate that the fees she described *would be*, as opposed to might possibly be, cost prohibitive to her. In light of the evidence before this Court, we find that Womack has not met her burden of proving that arbitration would be cost prohibitive.[31]

As a result of the foregoing, we conclude that Defendants have met their burden of proving the existence of a valid arbitration agreement, and Womack has failed to demonstrate a genuine issue of fact as to the validity of that agreement. Therefore, Defendants' Motion to Stay Litigation and to Compel Arbitration is granted, and the action will be stayed pending such arbitration.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants U.S. Bankcorp Investments, Inc.'s and U.S. Bankcorp, Inc.'s Motion to Stay Litigation and Compel Arbitration (Doc. 5) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 25th day of January, 2010, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[31]Because we find the pre-dispute arbitration provision is neither procedurally or substantively unconscionable, we need not address whether or not the agreements are contracts of adhesion. The Court has also reviewed Womack's arguments relating to the unfairness of arbitration, and find those arguments unpersuasive.